### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (BALTIMORE DIVISION)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **SOJOURNER-DOUGLASS COLLEGE, INC.** | ) | **Case No.: 18-12191 (RAG)** |
| | ) | **(Chapter 11)** |
| Debtor. | ) | |
| | ) | |

### THE TRUSTEE'S MOTION FOR ENTRY OF AN ORDER DISMISSING THE CHAPTER 11 CASE PURSUANT TO CERTAIN DISMISSAL PROCEDURES AND GRANTING RELATED RELIEF

Charles R. Goldstein, Chapter 11 Trustee ("**Trustee**"), hereby moves Court for the entry of an order, pursuant to sections 105(a), 305(a), 349(b), and 1112(b) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), and Rule 1017 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), dismissing this Chapter 11 Case upon the implementation of certain terms and conditions. In support of this Motion, the Trustee respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Trustee confirm his consent pursuant to Rule 9013-6 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "**Local Rules**") to the entry of a final order by the Court in connection with this Motion to the extent this Motion may become contested.

3.      The statutory bases for the relief requested herein are pursuant to sections 105(a),

1

305, 349, 363(b)(1), 554(a), and 1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 1017, 2002, and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

## REQUESTED RELIEF

4.      By this Motion, the Trustee respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit A** (the "**Dismissal Order**"), that will allow for the efficient dismissal of this Chapter 11 Case.  Entry of the Dismissal Order will not dismiss this Chapter 11 Case immediately. Rather, the Dismissal Order will authorize specific procedures that must be followed before the case may be dismissed.

## BACKGROUND

5.      Until 2015, Sojourner-Douglass College, Inc. (the "**Debtor**") operated as a private college in Baltimore, Maryland, focused on educating predominantly African-American and adult learners. At its peak, the Debtor enrolled 1,400 students at several campuses throughout Maryland and in the Bahamas and had approximately 100 employees.[1] In 2015, due to severe financial difficulties, the Debtor's regional accreditation was revoked by the Middle States Commission on Higher Education. Upon its loss of accreditation, the Debtor closed its doors and ceased operations.

6.      Although the Debtor pursued potential partnerships, joint ventures, sales, and other structures that could support the reinstatement of its accreditation, all such pursuits were unsuccessful. In May 2016, Debtor listed its main campus as well as a secondary administrative building for sale. The Debtor's efforts to sell this real estate failed.

---

[1] Sojourner-Douglass College Loses Bid To Restore Accreditation, The Baltimore Sun, August 24, 2015 (located at http://www.baltimoresun.com/news/maryland/education/bs-md-sojourner-ruling-20150828-story.html).

7.     The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 21, 2018 (the "**Petition Date**").

8.     On February 26, 2018, 1880 Bank ("**1880**") filed an *Emergency Motion for Relief from the Automatic Stay of 11 U.S.C. § 362 to Pursue the Appointment of a Receiver and/or a Foreclosure of Property* [D.I. 16], to which the Debtor filed a response on March 3, 2018 [D.I. 24]. The Court held a hearing on these matters on March 9, 2018, at which time 1880 requested its motion be converted to a motion pursuant to section 1104 of the Bankruptcy Code for the appointment of a chapter 11 trustee.

9.     The Debtor and 1880 resolved 1880's motion for appointment of a chapter 11 trustee pursuant to a *Consent Order Directing Appointment of Chapter 11 Trustee* dated March 27, 2018 [D.I. 49]. On March 30, 2018, the Court entered an *Order Approving the Appointment of Charles R. Goldstein as Chapter 11 Trustee* [D.I. 53]. The Office of the United States Trustee (the "**U.S. Trustee**") has not appointed an official committee for unsecured creditors in this Chapter 11 Case.

*The Adversary Proceedings*

A. **MHEC Adversary Proceeding**

10.     On or about June 13, 2018, the Maryland Higher Education Commission ("**MHEC**") initiated an adversary proceeding against the Debtor and the Trustee, by filing *Maryland Higher Education Commission's Complaint for Declaratory and Injunctive Relief. See MHEC v. Goldstein et al.*, Adversary Case No. 18-00219 (Bankr. D. Md. June 13, 2018), ECF. No. 1. Through the complaint, MHEC sought approximately 6,000 academic transcripts of former students of the Debtor, which the Debtor had not yet provided to MHEC.

11.     Neither the Trustee nor the Debtor filed an answer. On August 13, 2018, MHEC filed a *Motion for Entry of an Order (A) Approving a Tolling Agreement Between the Parties, (B) Postponing Proceedings in the Adversary Proceeding Pursuant to and in Accordance with the Parties' Tolling Agreement, and (C) Granting Related Relief*, through which MHEC attached a tolling agreement pursuant to which the Debtor, the Trustee (together, the "**Defendants**"), and MHEC agreed to temporarily suspend and toll the (a) Defendants' time to answer the Complaint, (b) any and all applicable statutes of limitations, statutes of repose, or (c) any other time limitation or requirement applicable to any cause of action or related claim or remedy that could be brought in connection" through the litigation. [MHEC AP, D.I. 6.]

12.     Accordingly, as set forth supra, filed contemporaneously herewith, the Trustee files a *Motion to Approve Compromise of Controversies Between the Bankruptcy Estate and the Maryland Higher Education Commission*. As of entry of such an order granting the relief sought therein, no issues will remain in the MHEC Adversary Proceeding, which will subsequently be closed.

**B. Roblyer Adversary Proceeding**

13.     On or about June 19, 2018, Michael Roblyer, Trustee of the Harrell S. Spruill Revocable Trust and Kecia Johnson (collectively, the "**Trust**"), initiated an adversary proceeding against the Debtor and the Trustee (the "**Roblyer Adversary Proceeding**") by filing their *Complaint to Determine the Ownership of Property Claimed by the Debtor*, specifically relating to the ownership of the Farm Property. *See Roblyer et al. v. Goldstein et al.*, Adversary Case No. 18-00226 (Bankr. D. Md. June 19, 2018), ECF. No. 1. The Debtor filed its Answer on August 22, 2018 [Roblyer AP, D.I. 17], while the Trustee filed his answer and affirmative defenses on September 14, 2018 [Roblyer AP, D.I. 24]. Only five days later, on September 19, 2018, the Trust

filed a motion for summary judgment (the "**Motion for Summary Judgment**") [Roblyer AP, D.I. 25].

14.    The Court entered an order granting the Trust summary judgment on August 20, 2019, pursuant to which the Court determined the Farm Property was not property of the estate. [Roblyer AP, D.I. 62]. As a result, although the Farm Property was initially included in the assets to be sold through a sale pursuant to section 363 of the Bankruptcy Code (and described in greater detail immediately below), the Farm Property was excluded from the proposed sale. Additionally, the timing of the sale motion and the Court's order on summary judgment in the Robyler Adversary Proceeding resulted in a continuation of the hearing scheduled on the motion for the sale of the Debtor's assets until the end of August 2019. The Robyler Adversary Proceeding was subsequently closed.

*The Trustee's Initial Efforts*

15.    Upon his appointment, the Trustee began to investigate and prepare an inventory of the Debtor's real estate and personal property holdings and identifying discrepancies in the Debtor's filed schedules that included an incomplete list of the Debtor's assets. However, the schedules did include all real property owned by the Debtor, including the properties at 200 N. Central Avenue, Baltimore, MD 21202 ("**200 N. Central Avenue**") and 500 N. Caroline Street,. Baltimore, MD 21205 ("**500 N. Caroline Street**"), as well as property at 249 Aisquith Street, Baltimore, Maryland[2] (the "**Aisquith Property**," together with 200 N. Central Avenue and 500 N. Caroline Street, constitute the "**Campus Properties**"). The Debtor also scheduled real property at:

---

[2] Prior to the Trustee's appointment, the Aisquith Property suffered from extensive fire and water damage that was not taken into consideration by the Debtor when completing the Debtor's schedules. Therefore, although the Debtor scheduled the value of the Aisquith Property at $549,700, this was inaccurate and, notably, did not consider the value of the Aisquith Property as a stand-alone property.

5963 Franklin Gibson Road, Tracey's Landing, Maryland 20779 (the "**Farm Property**"); 1020 Pier Pointe Landing, Baltimore, Maryland 21230 (the "**Pier Pointe Property**"); and 810 Park Ave., Baltimore, Maryland 21201 (the "**810 Park Ave. Property**").

16.     The Trustee collected all available information on the properties that would be of value to a prospective purchaser. As of April 12, 2018, the Trustee had established a data room and began conducting tours of the 1880 Properties to prospective bidders by April 16, 2018.[3] The Trustee also immediately met with 1880, as a secured creditor to the estate and began discussing a potential resolution to the 1880's claims and the liquidation of the 1880's collateral, namely, 200 N. Central Avenue and 500 N. Caroline Street (together, the "**1880 Properties**"). As a result, the parties entered into, and this Court approved, a *Consent Order Permitting the Chapter 11 Trustee's Use of Cash Collateral* [D.I. 80] (the "**Cash Collateral Order**"). The Trustee also secured the insurance proceeds which funded the Cash Collateral Order, by retaining Goodman-Gable-Gould/Adjuster's International [D.I. 90]. The parties acted under the Cash Collateral Order since its entry on June 17, 2018, without objection from 1880.

17.     During this same period, the Trustee used the limited funds provided by the Cash Collateral Order to secure and maintain the Properties, including, but not limited to, fixing the roof, boarding up windows and doors, cutting the grass, and removing vagrants.  In fact, at the July 17, 2018 status conference, counsel for 1880 stated on the record that she was "quite satisfied with the work that has been done by the trustee to secure the building. We feel that it is in a much better position than it was previously." July 17, 2018 Tr. 18:24-19:12. The Trustee responded to a number

_____

[3] In addition to online and brokerage listings, the Trustee, along with the assistance of a realtor, solicited bids from thirty-three (33) interested parties, hosted more than twenty (20) showings of Debtor properties, and received twelve (12) letters of intent for one or more Campus Properties as a result of the Estate's initial marketing campaign over the summer of 2018.

of security issues at the Properties (break-ins, vagrants, theft, vandalism, etc.) from the time of the Trustee's appointment and throughout the Chapter 11 Case. Given the size, location, and number of access points of the 1880 Properties, and the continued security issues, the Trustee suggested the 1880 consider retaining a private security company to safeguard the 1880 Properties from these security threats, but that proposal was rejected.

***The Trustee's Three Major Reorganization and/or Transaction Efforts***

18.    Overall, the Trustee cultivated three major reorganization and/or transaction efforts. The first involved extensive negotiations with a potential chapter 11 plan sponsor, Capricorn 25 Development LLC ("**Cap 25**"). These negotiations began in June 2018 and continued through December 2018. When negotiations with Cap 25 could no longer continue in December 2019, the Trustee reached out to the Beatty Development Group ("**Beatty**"), given its role as the lead developer for Baltimore's redevelopment plan for the Old Town and Perkins Homes neighborhoods. The Trustee and his counsel engaged in lengthy negotiations with Beatty to sell the estate's assets, but due to demands made by 1880, the negotiations ceased toward the end of February 2019. Still, the Trustee worked diligently to seek and cultivate additional offers from parties interested in purchasing the estate's assets and by July 2019, had entered into an asset purchase agreement with incCOMMUNICATIONS Services, Inc. ("**iCS**") for the purchase of substantially all of the estates assets. The efforts to sell the estate's assets continued through September 2020.

19.    As mentioned *infra*, beginning in mid-2018, Trustee engaged in lengthy negotiations with Cap 25 to sponsor a plan of reorganization of the Debtor. The negotiations culminated in a Loan Purchase Agreement, whereby Cap 25 agreed to purchase the debt owned by the Lender. Cap 25 representatives stated to me that, in addition to redeveloping the Properties, it

they wanted to continue the Debtor's mission of providing older African American students with a college education. Unfortunately, Cap 25 was unable to obtain financing to close the transactions contemplated by the Loan Purchase Agreement. Unfortunately, after several months of negotiations between the Trustee, Cap 25, and the secured lenders, these efforts collapsed in December 2018 as Cap 25 was ultimately unable to secure the necessary financing.

20.     When it became clear that Cap 25 would not be able to move forward with the Loan Purchase Agreement, the Trustee redoubled his efforts to identify a purchaser for substantially all of the assets of the estate and may be interested in becoming a stalking-horse bidder. The Trustee and his counsel, engaged Beatty Development Group ("**Beatty**") in negotiations to sell substantially all of the estate's assets. After these negotiations, Beatty offered to purchase the 1880 Properties and the Aisquith Avenue Property with a starting stalking-horse bid of $5 million. Continuing in his negotiations, the Trustee was able to convince Beatty to increase the bid to $6 million. Unfortunately, due to information not previously disclosed to the Trustee, 1880 (as the primary secured lender), rejected the $6 million base bid upon which other bids could be made through an auction. As a result, the Trustee was forced to look for, evaluate, and identify other prospective bidders and quickly negotiated a new sale of substantially all the Debtor's assets to yet another party.

21.     On July 10, 2019, the Trustee directed counsel to file the *Trustee's Motion to Approve An Order (A) Establishing Bid Procedures Related to the Sale of Substantially All of the Debtor's Assets, (B) Authorizing and Scheduling an Auction, (C) Approving the Form and Manner of Notice Thereof for the Proposed Sale of Assets Free and Clear of All Liens, Claims and Encumbrances, (D) Scheduling a Hearing on Approval of the Sale of the Assets, (E) Authorizing Payment of a Break-Up Fee, and (F) Granting Other Related Relief* (the "**Sale Motion**"). The

Sale Motion proposed the sale of substantially all of the Debtor's assets, including the Campus Properties, the Pier Pointe Property, and the Farm property, for $7,870,000 to iCS. [D.I. 131]. In accordance with the terms of the Sale Motion, the winning bidder would be required to pay a deposit. Specifically, the Asset Purchase Agreement (the "**APA**") filed in connection with the Sale Motion states:

> Within thirty (30) business days of the date hereof, Purchaser shall make a deposit often percent (10%) of the Purchase Price in the amount of Seven Hundred Eighty Seven Thousand Dollars ($787,000) (such cash payment, together with all interest earned on such funds, shall be referred to as the **"Deposit")**. The Deposit shall be paid to and held by Land Services USA, Inc. ("**Escrow Agent**") in escrow until the time of Closing.

The APA further states:

> **DEFAULT.** If Closing fails to occur due to a default on the part of Purchaser, the Deposit shall be paid over to Seller as liquidated, agreed and final damages, and Seller hereby waives all rights to specific performance or other remedies and any damages against Purchaser, and Purchaser shall be relieved from all further liability hereunder.

22.     A hearing on the Sale Motion was held on August 2, 2019, at which time the Court, *sua sponte*, continued the hearing until August 23, 2019, to consider and enter an order on the Trustee's interests in the Farm Property, which remained at issue in the Roblyer Adversary Proceeding.

23.     On August 15, 2019, 1880 filed a *Motion Of 1880 Bank For Relief From The Automatic Stay of 11 U.S.C. § 362 to Pursue the Appointment of a Receiver and/or a Foreclosure of Property* [D.I. 146], as well as an objection to the Sale Motion on August 19, 2019 [D.I. 149].

24.     Prior to August 23, 2019, the Trustee filed a Motion to Adjourn Hearings Scheduled for August 23, 2019 and September 13, 2019 (the "**Motion to Adjourn**") [D.I. 154]. Pursuant to the Motion to Adjourn, the Trustee explained that the entity seeking to be the stalking horse bidder

for the sale proposed in the Sale Motion had paid $150,000.00 toward the required ten percent (10%) deposit necessary ($787,000.00). The Trustee further explained the entity advised the Trustee it was working through funding issue to obtain the full amount of the deposit and, as a result, moving forward with the hearing on the Sale Motion on August 23, 2019, would not be in the best interests of the estate nor the best expenditure of the Court's time. The August 23, 2019 hearing was cancelled and on August 27, 2019, the Court entered an order granting the relief requested through the Motion to Adjourn.

25.    The Trustee and 1880 ultimately entered into a stipulation that providing the Trustee with additional time to negotiate a resolution of the proposed sale to iCS, the stalking horse bidder set out in the Sale Motion. [D.I. 131]. Unfortunately, the deal to sell substantially all of the Debtor's assets fell apart as the stalking horse bidder was unable to obtain sufficient financing to pay the full amount of the Deposit. Rather than the required $787,000, iCS was only able to pay $150,000 of the deposit, which was placed in escrow with the Escrow Agent. As a result, 1880 obtained relief from the automatic stay pursuant to a stipulation and order entered on October 7, 2019, allowing 1880 to exercise its rights and remedies against the 1880 Property in accordance with its loan documents with the Debtor and applicable, non-bankruptcy law ("including, without limitation, the right to . . . proceed with a foreclosure auction of the [1880] Property and to apply the proceeds from the sale of the Property to the Debtor's intendedness to [1880]." [D.I. 173]. The removal of the 1880 Properties from the estate inevitably prevented the Trustee from selling the Campus Properties together.[4]

26.    A detailed accounting of the Trustee's efforts, summarized above, is set forth on

---

[4] To the extent that any interest in the 1880 Properties remains under the Debtor's name entry of the proposed Dismissal Order by this Court confirms that no interest in the 1880 Properties remains with the estate and/or the Trustee.

this Court's docket, titled *Declaration of Charles R. Goldstein, Chapter 11 Trustee Pursuant to 28 U.S.C. § 1746*, and is incorporated herein by reference. [D.I. 169-1].

***Subsequent Sale Efforts***

27.     Around October 2019, the Trustee retained Joe Craig and his firm, Cummings & Company (collectively "**Cummings**") as a broker. As Cummings marketed the Aisquith Property, the Trustee continued to receive and entertain prospective bidders for the Aisquith Property and other Estate assets**.** In consideration of the past marketing efforts, and the understanding of the particular challenges presented by the Aisquith Property, on January 8, 2020, the Trustee entered into a Residential Contract of Sale to sell the Aisquith Property to Max Daddy LLC ("**Max Daddy**") for a $50,000, which was the highest and best offer for the Aisquith Property at that time (the "**Aisquith Contract**").

28.     On February 20, 2020, the Trustee directed McGuireWoods to file a *Motion Pursuant to 11 U.S.C. § 363 For Authority to Sell Properties Free and Clear of All Liens, Claims, Encumbrances and Interests* [D.I. 179] (the "**New Sale Motion**") seeking entry of an order approving the sale of the Aisquith Property and 810 Park Avenue, Baltimore, Maryland 21201 (the "**Park Avenue Property**").

29.     Pursuant to a notice of the New Sale Motion, objections were to be filed by March 12, 2020. Copies of the New Sale Motion and its notice were served on all creditors and all parties in interest. [D.I. 179]. The Notice of New Sale Motion and Hearing was served on over ninety (90) parties that had expressed in interest in potentially purchasing the Debtor's assets during the two years since the Trustee's appointment. The Notice explained that if a party wished to submit a bid for the property, it must submit a higher and better offer by March 11, 2020, and the party file an

objection by March 12, 2020. The bidding process and subsequent auctions procedures were fair and reasonable.

30.     The Trustee received no objections to the sale of the Park Avenue Property. On April 30, 2020, McGuireWoods submitted a revised form of order approving the New Sale Motion only as to the Park Avenue Property [D.I. 195]. On May 5, 2020, the Court entered the Order Approving the Sale of 810 Park Avenue, Baltimore, MD 21202 Free and Clear of All Liens, Claims and Encumbrances [D.I. 196]. That sale consummated and a Report of Sale has been filed with this Court [D.I. 233].

31.     With respect to the sale of the Aisquith Property, the Trustee received two objections. First, on March 9, 2020, Dominion Properties, LLC ("**Dominion**") filed an *Objection to the Sale Motion* attaching a sale contract to purchase the Aisquith Property for $100,000, double the price Max Daddy had agreed to pay [D.I. 181]. When Max Daddy submitted a topping bid to purchase the property for $150,000, Dominion withdrew its objection and offer. [D.I. 187]. Second, on March 11, 2020, the Mayor and City Counsel of Baltimore filed a Limited Opposition [D.I. 182] (the "**Limited Opposition**"). In addition, on March 26, 2020, the City filed its *Motion for Relief from Stay as to 249 Aisquith Street, Baltimore, MD* [D.I. 186] (the "**Stay Relief Motion**").

32.     Of critical importance to the City was that the proposed buyer have experience rehabilitating a historic property, thereby ensuring that the City could meet its goal of immediately abating the public nuisance caused by vacant and abandoned properties. To assuage the City's concerns, the Trustee facilitated conversations with Max Daddy and the City. On September 10, 2020, the City filed a Line withdrawing its Limited Opposition to the Sale Motion [D.I. 227] and a Line withdrawing the Stay Relief Motion [D.I. 228]. Because the City withdrew its opposition to the sale of the Aisquith Property, on September 19, 2020, the Trustee filed the Line requesting

entry of a revised form of order approving the sale of the Aisquith Property to Max Daddy [D.I. 229]. On September 23, 2020, the Court set a hearing for October 22, 2020.

33.     Afterward, Everbright Development A, LLC ("**Everbright**") expressed an interest in purchasing the Aisquith Property, proposing a sale price of $175,000. Even though Everbright's potential bid would be late, the Trustee decided to entertain Everbright's bid in order to fulfill his duties to maximize the value of the Debtor's Estate for the benefit of creditors.  On October 9, 2020, Everbright filed an Objection to the Sale Motion and submitted a bid of $170,000 for the Aisquith Property [D.I. 234]. The City later informed the Trustee that it did not object to the sale of the Aisquith Property to Everbright.

34.     The Trustee was subsequently contacted by Max Daddy expressing interest in overbidding Everbright. Having two potential purchasers, the Trustee oversaw a process to obtain a best and final offer for the Aisquith Property and on October 20, 2020, the Trustee accepted Max Daddy's bid of $251,000 as the highest and best offer and directed the return of Everbright's deposit. On October 20, 2020, Everbright withdrew its Objection to the Sale. [D.I. 235]. The Trustee discussed the terms of the sale with MDPA H Capital, LLC as the secured lender, which consented to the sale. The Trustee, in his business judgment, determined the sale was fair and reasonable, and in the best interest of the Estate, its creditors, and other parties in interest, as it will provide a greater recovery for the Estate than any alternative.

***Status of the Estate***

30.     As detailed above, the Trustee has liquidated substantially all of the estate's assets through various sales, the proceeds of which have gone to the undersecured first-lien holders. The Debtor has not conducted any business since prior to the filing of the Chapter 11 Case. As a result, the Trustee does not have an ongoing business to conduct. Since the most recent closing date and

distributing the sale proceeds resulting from the sale, the estate has existed solely to ensure the preparation and filing of the requisite monthly operating reports, take actions to help ensure the payment of any remaining funds for administrative claims, abandoning the de mininis assets of the estate, and otherwise arranging for an orderly exist from bankruptcy. While doing so, the estates continue to accrue professional fees (for which the professionals do not expect to be paid), and U.S. Trustee's fees. There are no other assets to distribute; therefore, there is no reason, nor any funds available, to pursue a plan of reorganization or a plan of liquidation.

31.     The Debtor does not have sufficient assets to provide a distribution on account of any junior secured claims or priority claims. Nevertheless, the dismissal contemplated by this Motion ensures the payment of certain administrative expenses pursuant to the distribution scheme established by the Bankruptcy Code. No other distributions and/or transfers will be made.

## ALL REMAINING ASPECTS OF CASE

32.     The proposed terms, conditions, and procedures to implement the structured dismissal of this Chapter 11 Case are set forth below (collectively, the "**Dismissal Procedures**").

a.     Final Distribution.

(i)     Any creditor with an administrative claim under section 507(a)(2) of the Bankruptcy Code must file an application for the approval of such claim within twenty-one (21) days (the "Administrative Claim Bar Date") of the date of service of a notice (the "Administrative Claim Bar Date Notice") approved by the Court.

(ii)     The Trustee shall review any section 507(a)(2) Claims filed under these procedures and shall have fourteen (14) days from the Administrative Claim Bar Date to file any objection to a filed application for approval of a 507(a)(2) Claim

(iii)     Any creditor that does not file an application by the Administrative Claim

Bar Date with respect to a 507(a)(2) Claim shall be forever barred from asserting such claim or receiving any distribution from the Debtors' estates on account of such claim. A proof of claim (Official Bankruptcy Form 410 or similar form) will not be counted as an application.

(iv)   In the event that a Professional seeks payment of fees and reimbursement of expenses for time periods beyond those covered by previously approved interim fee applications, such Professional must file a final fee application by the Administrative Claim Bar Date.

(v)   The Trustee shall make the Final Distribution in accordance with the provisions below to those creditors with: (i) Allowed Administrative Claims; or (ii) an allowed 507(a)(2) Claim, following the resolution, whether by settlement or order of the Court, of all timely filed 507(a)(2) Claims (an "Allowed 507(a)(2) Claims," and together with the Previously Allowed Administrative Claims, the "Allowed Administrative Claims").

(vi)   The Final Distribution will be made to all Allowed Administrative Claims, including the allowed claims of Professionals, on a *pro rata* basis.

(vii)   The Trustee will seek permission to take the steps necessary to effectuate the Final Distribution without further order of the Court.

(viii)   In the event that any distribution made hereunder has not cleared within ninety (90) days of payment (a "Returned Distribution"), Debtors' counsel will be permitted to re-distribute those funds to remaining creditors with Allowed Administrative Claims entitled to payment hereunder on a *pro rata* basis without further order of the Court.

(ix)     Notwithstanding the foregoing subsection, the Debtors will not be required to re-distribute a Returned Distribution if the amount of the aggregated Returned Distributions is less than $5,000. Rather, in such circumstance, Debtors counsel shall be permitted to donate such funds to a 501(c)(3) organization of the Trustee's counsel's choosing without further order of the Court.

(x)     Debtors shall carve out of the Final Distribution sufficient funds to pay the United States Trustee (the "<u>UST</u>") any fees owed under 18 U.S.C. § 1930 (the "<u>UST Fees</u>"), and shall pay any outstanding UST Fees at the same time as making the Final Distribution.

(xi)     Prior to the payment of the Final Distribution under these procedures, the Trustee will file with the Court and mail to those creditors with Allowed Administrative Claims a notice indicating the amount of distribution to be made to each creditor with an Allowed Administrative Claim, the total amounts received to date by such creditor from the Debtors, and the resulting percentage of payment on such creditor's Allowed Administrative Claim (the "<u>Final Distribution Notice</u>"). To the extent that any creditor objects to the amount of any Final Distribution payment, which objection shall be limited to whether such distribution is in the correct amount in accordance with these procedures, such objection (a "<u>Final Distribution Objection</u>") must be filed with the Court and served on parties in interest within fourteen (14) days of the filing and service of the Final Distribution Notice (the "<u>Final Distribution Objection Deadline</u>"). In the event that any Final Distribution Objection is not resolved by consent between the

Debtors and the party making a Final Distribution Objection, the issue will be brought to the Court for final adjudication.

(xii)    Upon the passing of the Final Distribution Objection Deadline with no Final Distribution Objections having been filed, or upon the resolution of all timely filed Final Distribution Objections, if any, the Trustee shall make the Final Distribution.

(xiii)    Notwithstanding the foregoing, the Trustee, in his discretion, may make a partial Final Distribution while reserving sufficient funds to cover any disputed amounts raised within twenty-one (21) days from the date of the Administrative Claims Notice, without further order of the Court.

(xiv)    Within three business days of the payment of the Final Distribution, the Trustee shall file with the Court a Line indicating that there are no remaining objections to the Final Distribution, that the Final Distribution has been made and requesting that the Court enter an order dismissing the Chapter 11 Case.

b.    <u>Abandon De Minimis Assets</u>. The estate possesses certain assets (the "**<u>De Minimis Assets</u>**") which either (i) the Debtor's wind-down has rendered obsolete, excessive, or burdensome; or (ii) which the Trustee has determined, after evaluating storage and maintenance costs as well as auction prospects in its reasonable business judgment, are of marginal, no, or negative value to the estate. These De Minimis Assets include the Debtor's name and a vehicle titled in the Debtor's name.

c.    <u>No Ongoing Adversary Proceedings</u>. The Robyler Adversary Proceeding is closed and has been for some time. The issues raised in the complaint filed in the MHEC Adversary Proceeding will all be resolved upon entry of an order granting the relief sought

by the Trustee through the *Motion to Approve Compromise of Controversies Between the Bankruptcy Estate and the Maryland Higher Education Commission* filed contemporaneously herein. As of entry of such an order, there will be no ongoing adversary proceedings related to this Chapter 11 Case.

 d. <u>Dissolution of Debtor</u>. After dismissal of the Chapter 11 Case, the Debtor shall be authorized and empowered to take all reasonably necessary steps to dissolve under applicable law, including taking such actions, executing such documents, and expending such funds as may be reasonably necessary to carry out or otherwise effectuate the terms of this Order, without stockholder approval. The Trustee shall be authorized to execute and file all necessary documents and take all such actions as may be necessary or appropriate to effectuate the dissolution of the Debtor under applicable law.

 e. <u>Survival of Orders</u>.  Notwithstanding section 349 of the Bankruptcy Code, all stipulations, settlements, rulings, orders, and judgments of the Court made during the course of the Chapter 11 Case shall remain in full force and effect and shall survive dismissal of the Chapter 11 Case.

 f. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of the Dismissal Procedures Order and any other order of the Court entered in the Chapter 11 Case.

<u>Exculpation</u>.  The Trustee recognizes that Dismissal Procedures and the actions contemplated thereby will not result in full payment on administrative claims in this Chapter 11 Case, nor will it provide for any payment on general unsecured claims. In that potentially volatile environment, the Trustee realizes that third parties could seek to delay implementation of the

Dismissal Procedures by, among other things, initiating third party actions against one or more of the Protected Persons (collectively, the "Third Party Actions"), the purpose of which may be to effect a delay in another forum. The effect of any such Third Party Actions, would be twofold: (a) they would serve as a collateral attack on this Court's order authorizing the implementation of the Dismissal Procedures; and (b) they would substantially jeopardize the final administration and conclusion of this Chapter 11 Case. Thus, the persons who developed and approved the Dismissal Procedures and who will be charged with its implementation (the "Protected Persons") should be protected for any and all good faith actions that they took (or will take) to develop, approve and implement the Dismissal Procedures in accordance with this Court's order (the "Exculpation"). This Exculpation does not cover the Protected Persons from any willful misconduct, gross negligence, and malpractice. The Protected Persons are the Trustee (Charles R. Goldstein), the Trustee's firm (3Cubed Advisory Services LLC), and counsel for the Trustee (McGuireWoods LLP).

## BASIS FOR RELIEF REQUESTED

I.  **DISMISSAL OF THIS CHAPTER 11 CASE IS WARRANTED UNDER SECTION 1112(b) OF THE BANKRUPTCY CODE.**

33.     Under section 1112(b) of the Bankruptcy Code, a court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, *whichever is in the best interests of creditors and the estate*, for cause." 11 U.S.C. § 1112(b)(1) (emphasis added); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999). The Court should dismiss this Chapter 11 Case because: (i) there is cause to do so and (ii) dismissal is in the best interests of creditors and the estate.

A.  **Cause Exists To Dismiss This Chapter 11 Case.**

34.     A determination of cause is made by the Court on a case-by-case basis. *See Albany*

*Partners*, 749 F.2d at 674.  Case law interpreting section 1112(b) of the Bankruptcy Code indicates that a court has wide discretion in determining whether cause exists to dismiss a chapter 11 case. *See In re Preferred Door Co*., 990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating a determination of whether cause exists under section1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n. 7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code).

35.     Section 1112(b)(4) of the Bankruptcy Code provides a nonexclusive list ofsixteen grounds for dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(A)-(P); *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that the list in section 1112(b) of the Bankruptcy Code is non-exhaustive); *Blunt*, 236 B.R. at 864 (same); *In re Camden Ordinance Mfg. Co. of Ark., Inc.*, 245 B.R 794, 799 (E.D. Pa. 2000) ("[T]he bankruptcy court may find 'cause' for conversion or dismissal for reasons beyond the enumerated examples in § 1112(b)").

36.     At least three grounds for dismissal exist in this Chapter 11 Case. First, cause exists to dismiss this Chapter 11 Case because there is an "inability to effectuate substantial consummation of a confirmed plan [of reorganization]." 11 U.S.C. § 1112(b)(4)(M).Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carryone out" or where the "core" for a workable plan of reorganization "does not exist." *See Preferred Door*, 990 F.2d at 549 (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding "[i]nability to effectuate a plan arises where debtor lacks the capacity to 'formulate a plan or carry one out'"); *Blunt*, 236 B.R. at 865 (finding cause to dismiss case under section 112(b) of the Bankruptcy Code where "core" for a workable plan of reorganization foundto be nonexistent). Second, cause exists

to dismiss this Chapter 11 Case because the Debtor failed to file a plan within the time fixed by the Bankruptcy Code.  11 U.S.C. § 1112(b)(4)(J). Third, cause exists to dismiss this Chapter 11 Case because there is a "substantial [and] continuing loss to or diminution of the estate and the absence of a reasonable likelihood ofrehabilitation." 11 U.S.C. § 1112(b)(4)(A).

37.     In this Chapter 11 Case, it is not realistic or even possible for the Debtor toconfirm a chapter 11 plan. The Trustee has liquidated virtually all of the estate's assets, has resolved all pending litigation that could result in a recovery to the Debtor's estate, and has no business to reorganize. All of the Debtor's remaining assets of any value are for the payment of administrative expense claims. There is no longer any source of income remaining for the estate, although the estate continues to incur certain post-petition administrative expenses, such as quarterly fees due under 28 U.S.C. § 1930(a)(6). Consequently, there is no prospect of distributions to holders of Priority Claims or allowed general unsecured claims. Cause exists to dismiss this Chapter 11 Case under sections 1112(b)(4)(J) and (b)(4)(M) of the Bankruptcy Code due to the Trustee's inability to propose, much less effectuate, a plan of liquidation.

38.     Additionally, if this Chapter 11 Case is not dismissed promptly, the Debtor will continue to incur unnecessary administrative expenses, creating substantial or continuing losses, as referenced in the first element of section 1112(b)(4)(A) of the Bankruptcy Code. The Debtor no longer has any business to operate, and it is beyond rehabilitation, meetingthe second element of cause under section 1112(b)(4)(A).  As a result, the Trustee also has met his burden of proof to show that cause exists to dismiss this Chapter 11 Case under section 1112(b)(4)(A) of the Bankruptcy Code.

**B.     Dismissal Of This Chapter 11 Case Is In The Best Interests Of Creditors, Estate, and Debtor.**

39.     Once a court determines that cause exists to dismiss a chapter 11 case, thecourt

must evaluate whether dismissal is in the best interests of the estate and creditors. *See In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R 402, 411 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988). A variety of factors demonstrates that it is in the best interests of the Debtor's estate and creditors to dismiss this Chapter 11 Case and authorize the relief sought herein.

40.    Dismissal of a chapter 11 case is in the best interests of creditors where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *Camden Ordinance*, 245 B.R. at 799 (finding that a reorganization to salvage a business which ceased doing business was not feasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue to the reorganization). As explained above, the Debtor has nothing left to reorganize, as virtually all of the Debtor's assets have been liquidated. The only remaining tasks to be undertaken are the transfer of the *de minimis* assets of the estate to Dr. Simmons and the reconciliation and payment of administrative expense claims. Once these tasks are completed, the Chapter 11 Case will be ripe for dismissal as there is no other action needed to administer this estate.

41.    Dismissal of this Chapter 11 Case also is warranted because the alternative— conversion to a case under chapter 7 of the Bankruptcy Code—would not serve the best interests of the Debtor's estate and creditors. One element of the best interests test focuses on whether the economic value of the estate is greater inside or outside of bankruptcy. *See In re Clark*, No. 95-2773, 1995 WL 495951, at *5 (N.D. Ill. Aug. 17, 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise. *See Clark*, 1995 WL 495951 at *5. Here,

dismissal will maximize the value of the estate because conversion to chapter 7 would impose substantial and unnecessary additional administrative costs upon the estate with no correlative benefit.  In other words, there is nothing for a chapter 7 trustee under these circumstances.

42.    Any actions taken by the Trustee, the Trustee's representatives, including the Trustee's counsel, to implement the Dismissal Procedures will be taken pursuant to this Court's order authorizing such implementation. Granting the Exculpation provided for in the Dismissal Procedures is supported by case law. Bankruptcy courts frequently utilize their equitable powers under section 105(a) to authorize a debtor to take actions, such as those requested here, that are consistent with the provisions of the Bankruptcy Code and that are necessary to preserve the value of the estate's assets, the estate, and secure the orderly administration of the estate. The approval of the Dismissal Procedures and the supervision of its implementation is within the exclusive jurisdiction of this Court. In seeking the Exculpation of the Protected Persons, the Trustee is not attempting to usurp the ability of any governmental body to exercise its police and regulatory power. Rather, the Exculpation is intended to: (a) acknowledge that the Protected Persons will be acting in accordance with, and pursuant to, this Court's order (if one should issue) authorizing the implementation of the Dismissal Procedures, and (b) provide the Protected Persons with a defense for taking good faith actions consistent with and in furtherance of such Court order. *See In re Creative Cuisine, Inc.*, 96 B.R. 144, 147 (Bankr. N.D. Ill. 1989) (noting debtors in possession have the "rights, powers and duties" of a trustee and so, personal liability will be imposed on debtors in possession "only if they deliberately breach their fiduciary duties or act outside their authority").

## II.    DISMISSAL OF THIS CHAPTER 11 CASE IS WARRANTED UNDER SECTION 305(a)(1) OF THE BANKRUPTCY CODE.

30.    Alternatively, cause exists to dismiss this Chapter 11 Case pursuant to section

305(a) of the Bankruptcy Code, which provides, in pertinent part:

> (a)     The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if –
>
> (1)     the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .

11 U.S.C. § 305(a). In applying section 305(a) of the Bankruptcy Code, courts have considered a wide range of factors, including, but not limited to:

> (1)     economy and efficiency of administration;
> (2)     whether federal proceedings are necessary to reach a just and equitable solution;
> (3)     whether there is an alternative means of achieving an equitable distribution of assets; and
> (4)     whether the debtor and the creditors are able to work out a less expensive out-of- court arrangement which better serves the interests in the case.

*In re Crown Village Farm, LLC*, 415 B.R. 86, 97 (Bankr. D. Del. 2009) (enumerating 305(a) factors and denying motion only after finding dismissal would lead to disastrous results for chapter 11 case "which would languish while core issues were tried elsewhere"); *see also In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996). However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." *Mazzocone*, 200 B.R. at 575.

44.     Dismissal of this Chapter 11 Case is warranted under section 305(a)(1) for the same reasons that "cause" exists to dismiss this Chapter 11 Case pursuant to section 1112(b)—dismissal of the case will effectuate an efficient administration of the estate and represents the least expensive and most equitable alternative for the distribution of assets. Indeed, courts have approved dismissals similar to that proposed by this Motion under section 305(a) of the Bankruptcy Code. *See, e.g., In re Al Liebers Golf Equipment, Inc., d/b/a The World of Golf*, No. 12-23698 (RDD), Doc. No. 135 (Bankr. S.D.N.Y. Aug. 28, 2013); *In re TSIC, Inc. f/k/a Sharper Image Corp.*, No.

08-10322 (KG), Doc. No. 2475 (Bankr. D. Del. Aug. 13, 2012); *In re Beacon Power Corp.*, No. 11-13450 (KJC), Doc. No. 341 (Bankr. D. Del. May 1, 2012); *In re CSI, Inc.*, No. 01-12923 (REG), Doc. No. 284 (Bankr. S.D.N.Y. July 24, 2006).

45.    Authorizing the dismissal of this Chapter 11 Case furthers the efficient administration of the estate and maximizes value to the greatest extent possible.

## WAIVER OF STAY

46.    Given the Debtor's administrative insolvency, the Debtor desires to commence implementation of the Wind-Down Plan immediately upon the entry of the order approving this Motion. Consequently, the Debtor hereby requests that the Court waive the fourteen (14) day stay of any order approving this Motion, by exercising the discretion provided the Court under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor submits that the exigency of their present circumstances, described in detail herein, warrants a waiver of the stay imposed by Bankruptcy Rule 6004(h). *See Yamaha Motor Corp., USA v. Schreiber (In re Perry Hollow Mgmt. Co.),* 260 B.R. 58, 65 (D.N.H. 2001) (waiving the stay under Bankruptcy Rule 6004[(h)], (formerly subsection "(g)") to permit the sale of estate property the following day where the sales price was found to be reasonable, the buyer was ready to close and the estate would likely have to pay to continue storing the property); *Akai Holdings, Ltd. v. Singer Co., N.V. (In re Singer Co. N.V.),* No. M-47(V), 2000 U.S. Dist. LEXIS 2565, at *48-*52 (S.D.N.Y. Mar. 7, 2000) (stating that "[t]he bankruptcy court denied the requested stays [under Bankruptcy Rules 6004(g) and 6004(d)] in order to ensure the quick distribution of funds that it had found so vital to the continuing and successful reorganization of [the debtors] and to promote the rehabilitative purposes behind Chapter 11"); *In re Quanalyze Oil & Gas Corp.,* 250 B.R. 83, 91 (Bankr. W.D. Tex. 2000) (authorizing the closing of a sale of estate property one day after the

entry of the order authorizing the sale where the estate would lose the property to foreclosure if the sale were not consummated).

## LOCAL RULE 9013-2 STATEMENT

47.     Pursuant to Local Rule 9013-2, the Trustee will not be filing a separate memorandum with respect to this Motion, but rely solely upon the grounds and authorities set forth in the Motion.

## NOTICE

48.     As required by Bankruptcy Rules 2002 and 6007(a) and Local Rules 2002-1, 2002-2 and 6007-1, the Trustee is serving notice of the Motion to all parties in interest in this Chapter 11 Case.

## NO PRIOR REQUEST

49.     No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Trustee respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as this Court deems just and proper.

Dated:  July 28, 2021.                                      Respectfully Submitted,

*/s/ John H. Thompson*
John H. Thompson (Federal Bar No.16858)
Peter J. Duhig (Federal Bar No. 26899)
**McGuireWoods LLP**
jthompson@mcguirewoods.com
2001 K Street, N.W., Suite 400
Washington, DC 20006-1040
T: (202) 857-2474
F: (202) 828-2976
pduhig@mcguirewoods.com
500 E. Pratt Street, Suite 1000
Baltimore, MD 21202

T: (410) 659-4400
F: (410) 659-4599

## CERTIFICATE OF SERVICE

I hereby certify that on this July 28, 2021, a copy of the foregoing Motion was served via CM/ECF upon:

- Laura Skowronski Bouyea    lsbouyea@venable.com, dmdierdorff@venable.com
- Darek Bushnaq    dsbushnaq@venable.com
- Timothy Stephen Carey    tcarey@naglezaller.com
- Peter J. Duhig    pduhig@mcguirewoods.com, dtorres@mcguirewoods.com
- Charles R. Goldstein    trustee@3cubed-as.com, MD13@ecfcbis.com
- Patricia B. Jefferson    pjefferson@milesstockbridge.com
- Anu Kmt    akemet@kemethuntlaw.com, alima@kemethuntlaw.com;ybeheton@comcast.net
- Katherine A. (UST) Levin    Katherine.A.Levin@usdoj.gov, brenda.b.wilmore@usdoj.gov
- Eric S. Lipsetts    eric@lipsetts.com
- Adam M Lynn    alynn@mdswlaw.com, dwalker@mdswlaw.com
- Shelly Martin    smartin@oag.state.md.us
- Timothy F McCormack    mccormackt@ballardspahr.com, stammerk@ballardspahr.com;mcgeoghm@ballardspahr.com;cromartie@ballardspahr.com;prattmn@ballardspahr.com;bktdocketeast@ballardspahr.com
- Michelle McGeogh    mcgeoghm@ballardspahr.com, stammerk@ballardspahr.com;cromartie@ballardspahr.com;bktdocketeast@ballardspahr.com
- James C. Olson    jolson@jamesolsonattorney.com, G27108@notify.cincompass.com
- Craig Palik    cpalik@mhlawyers.com, dmoorehead@mhlawyers.com;cpalik@ecf.inforuptcy.com;kolivercross@mhlawyers.com
- Joel Perrell    jperrell@milesstockbridge.com
- Jeffrey Brian Schultz    jschultz@lawschultz.com
- Joseph Michael Selba    JSelba@tydingslaw.com
- Samuel D Snyder    samuel.snyder@baltimorecity.gov
- John H. Thompson    jthompson@mcguirewoods.com
- US Trustee - Baltimore    USTPRegion04.BA.ECF@USDOJ.GOV
- James Edward Van Horn    jvanhorn@btlaw.com
- Christine Wellons    christine.wellons@maryland.gov

mailed, postage prepaid to:

Ephraim Barkai
MDPA H Capital, LLC
21 Mohawk Place
Lakewood, NJ 08701

Stephen J Ferrandi
EA Commercial Real Estate LLC
5771 Waterloo Road
Ellicott City, MD 21043

William John Ganz
649 Ponte Villas South
Baltimore, MD 21230

Jennifer Katz, Esq.
Principal Counsel, Maryland Higher Education Commission
Office of the Attorney General
6 North Liberty Street, 10th Floor
Baltimore, MD 21201

Land Services USA, Inc.
Christina M. Frankenberg
Title Officer
215 Washington Avenue, Suite 707
Towson, MD 21204

Oak Point Partners, LLC
Attn: Janice A. Alwin, SVP and General Counsel,
5215 Old Orchard Rd., Ste. 1000
Skokie, IL 60077


                                        */s/ Peter J. Duhig*_____
                                        PETER J. DUHIG